UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20819-CIV-MORENO/SIMONTON

**SONY COMPUTER ENTERTAINMENT**
**AMERICA, INC.,**

    **Plaintiff,**

v.

**NASA ELECTRONICS CORP.,** *et al.***,**

    **Defendants.**
_____/

**ORDER ON DISCOVERY MOTIONS**

This cause comes before the Court on the Motion for Protective Order filed by Defendants, World International Trading, Inc. and Filippo Boccara (DE # 60);[1] and the Motion to Compel Rule 30(b)(6) Deposition of Defendant World International Trading, Inc., filed by Plaintiff, Sony Computer Entertainment America, Inc. ("SCEA") (DE # 65).[2] The Honorable Federico A. Moreno, Chief United States District Judge, has referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law, with respect to any and all pretrial matters (DE # 44). Based upon a review of the record and for the reasons stated herein, Defendants' motion is **GRANTED, *in part*,** and Plaintiff's motion is **DENIED** without prejudice.

    I.    **INTRODUCTION**

**Plaintiff Sony Computer Entertainment America Inc ("SCEA" or "Sony America") brought this action "to enjoin the distribution and sale of PlayStation® videogame consoles and systems that are not legitimate, authorized, nor even functional for the**

---

[1]     Plaintiff responded (DE # 63) and Defendants replied (DE # 66).

[2]     Defendants responded (DE # 68) and Plaintiff replied (DE # 69).

North American market" (DE # 1 at 1).

Plaintiff contends that "Defendants are shipping and importing tens of thousands of the infringing systems into the United States and elsewhere where consumers who purchase them will be deceived, frustrated, and confused when they realize that these systems will not play videogames that are sold in and for the North American market" (DE # 1 at 1). Plaintiff asserts the following claims for relief: federal trademark infringement, pursuant to 15 U.S.C. § 1114; (Count 1); federal unfair competition, pursuant to 15 U.S.C. § 1125 (Count 2); illegal importation of goods bearing infringing trademarks, pursuant to 15 U.S.C. § 1124 (Count 3); and, Florida unfair competition (Count 4). The Complaint also seeks an equitable accounting and constructive trust,

Plaintiff alleges that Defendants are shipping, importing, distributing and/or selling into and in the United States and elsewhere, PlayStation® systems that are illegitimate versions that use the trademarks without authorization, since those systems are manufactured and marketed for use only in Asia, and will not play videogames marketed for and available in North America, or elsewhere outside Asia (DE # 1, ¶ 25).

When Plaintiff, Sony Computer Entertainment America, Inc. ("SCEA") sought to depose a corporate representative of Defendant, World International Trading, Inc. ("WIT"), pursuant to Federal Rule of Civil Procedure 30(b)(6), WIT, in a motion filed jointly with its President and co-defendant Fillipo Boccara, sought the entry of a protective order to shield the disclosure of confidential information it expected to divulge during the deposition (DE # 60). Plaintiff, on the other hand, filed a motion to compel the deposition (DE # 65). The parties appear to agree that this Court should approve a confidentiality order protecting sensitive materials exchanged during the course of discovery from harmful disclosure, and each party has attached its own

version of a proposed confidentiality order to its pleadings.  They have not, however, been able to agree on a final proposed order that satisfies their disagreement over certain, key terms and conditions that should be included in the order (DE # 60, Ex. B; DE # 63, Ex. A).

## II.     THE PENDING DISPUTE[3]

Three areas of concern constitute the heart of the parties' disagreement.[4]  The first pertains to the inclusion (and amount) of a liquidated damages provision intended to address any party's disclosure of confidential materials in contravention of the confidentiality order.  The second pertains to whether the "attorney eyes only" designation of confidential materials will include in-house counsel.  The third pertains to the scope of permissible uses of confidential information.

### A.     Liquidated Damages

Defendants argue that a liquidated damages provision for the disclosure of confidential material is necessary because requiring proof of damages is "unrealistic since it is often hard to put a concrete dollar value on the harm of an unauthorized disclosure" (DE # 60 at 6).  SCEA asserts that the remedy for an unauthorized disclosure "should be based on the specific circumstances surrounding the disclosure, the effect of the disclosure, and whether any harm occurred," rather than imposing the same

---

[3]     Even though SCEA's motion to compel seeks to depose a corporate representative of WIT without mentioning its President and co-defendant, Mr. Boccara, by name, the interests of both defendants are aligned for these purposes, as evidenced by their joint filing of their motion for protective order relating to SCEA's deposition of WIT (DE # 60) and reply thereto (DE # 66).  Therefore, this Order expressly applies to WIT and Mr. Boccara with equal force.

[4]     Defendants have agreed to remove any limitation on the type of document that may be designated confidential, and thus agree with SCEA that the parties should be free to designate any document as confidential (DE # 60 at 2).

penalty for any disclosure, no matter how minimal its consequences or inadvertent its release (DE # 63 at 4).

Defendants further propose that unauthorized disclosure of documents by WIT should range from $5,000 to $10,000 per disclosure, while the penalties for SCEA's unauthorized disclosures should be ten times greater – between $50,000 and $100,000 – in order to account for the financial disparity between WIT and SCEA, and to ensure that the sanctions for violating the confidentiality order are somewhat proportionate and therefore have a similar deterrent effect upon both parties (DE # 66).

This Court has broad authority to fashion a protective order that serves the interests of the parties and the administration of justice.  Fed. R. Civ. P. 26(c).  To be sure, there is also non-binding caselaw indicating that other courts have, on a rare occasion or two, hinted that confidentiality orders might include liquidated damages provisions in the event of a breach.  *See Wendt v. Walden Univ., Inc.*, 1996 WL 84668, at *3 (D. Minn. 1996) (unpub. op.); *cf. Denison v. Oregon*, 211 F.R.D. 408, 410 (D. Or. 2002).

Those authorities provide scant support for Defendants' position since there is no case that is squarely and expressly on point; in fact, the case most favorable to Defendants, and the one cited in their reply brief, only goes so far as to conclude that the parties might agree to include a liquidated damages provision in a proposed order. *Wendt, supra*.  Defendants have not cited – nor has this Court found – any case in which a valid and binding confidentiality order requires the imposition of liquidated damages without regard to the circumstances surrounding the breach, to say nothing of a confidentiality order that sets a stiffer penalty for one party's breach in order to ensure that both parties are similarly deterred from committing an unauthorized disclosure.

The record is devoid of any indication (1) that SCEA is particularly inclined to

flout an Order of this Court; (2) that this Court lacks the enforcement authority to appropriately penalize a breach of the confidentiality order by SCEA; or (3) that this Court cannot fashion adequate sanctions to deter future violations. It is simply not necessary at the present juncture to replace the Court's flexibility to address either party's non-compliance of a Court Order by examining the surrounding circumstances on a case-by-case basis with a liquidated damages provision.

### B. In-House Counsel's Access to "Attorneys' Eyes Only" Material

Defendants also assert that SCEA's in-house counsel should be barred from reviewing any materials that are designated confidential on an "attorneys' eyes only" basis because SCEA's in-house counsel is "an officer of [SCEA] directly involved in competitive decision making," and therefore, "[t]here is no possible way that WIT can reliably trust that" SCEA will "not abuse the degree of confidentiality required of an attorneys' eyes only submission" (DE # 60 at 5). SCEA responds that it "envisions a need to disclose some discovery materials to in-house counsel," and that "preventing SCEA from showing discovery to the persons best qualified to understand it in the context of this case would severely prejudice SCEA" (DE # 63 at 5). Defendants insist that SCEA can seek guidance from SCEA's attorneys about technical information that they cannot comprehend, without allowing its in-house counsel to access all confidential discovery documents exchanged during discovery.

Both parties rely heavily on *U.S. Steel Corp. v. United States* in support of their respective positions. 730 F.2d 1465 (Fed. Cir. 1984). Plaintiff points out that *U.S. Steel* discourages courts from denying in-house counsel access to confidential materials as a matter of course and that the case also notes that in-house counsel, like retained counsel, "are bound by the same Code of Professional Responsibility, and are subject to

the same sanctions." *Id*. at 1468. Defendants argue that applying *U.S. Steel*'s case-by-case approach to the matter at bar would prevent SCEA's in-house counsel from accessing confidential materials because she "is a corporate officer . . . who also happens to be an attorney[; s]he is not a member of the Florida Bar;" and the risk is too great that she would learn, through confidential materials, which suppliers and customers of Playstation® consoles were involved with the challenged activities of Defendants, and then Plaintiff would retaliate against those persons or entities (DE # 66 at 4).[5] Defendants are also concerned that she would disclose those entities to other corporate officers, perhaps inadvertently in business meetings.

Contrary to SCEA's argument, this Court is empowered to construct an appropriate confidentiality order based upon the *prospective* likelihood of inadvertent disclosure. And yet, "[w]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . by the facts on a counsel-by-counsel basis." *U.S. Steel*, 730 F.2d at 1468. The undersigned recognizes that "giving controlling weight to the classification of [SCEA's] counsel as in-house rather than retained" is not appropriate. *Id*.

Factors relevant to reviewing the propriety of restricting the access of *any*

---

[5] While SCEA is correct to point out that *U.S. Steel* was decided pursuant to a statutory provision concerning access to confidential information in cases before the Court of International Trade, which is more stringent that the Federal Rules of Civil Procedure governing discovery, the core holdings that in-house counsel are not *per se* barred from accessing confidential discovery materials and that courts must make a case-by-case factual determination of any attorney's likelihood of inadvertently disclosing confidential discovery materials regardless of her status as in-house or outside counsel, have been applied in the civil context, and are applicable here. *See, e.g., Lockeed Martin, Corp. v. The Boeing Co.*, Case No. 6:03cv796, 2005 WL 5278461, at *3 (M.D. Fla. Jan. 26, 2005) (Spaulding, M.J.); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

attorney – in-house or retained – to discovery materials based on the likelihood of inadvertent disclosure include:

1. that attorney's involvement in "competitive decisionmaking," which is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor," *U.S. Steel*, 730 F.2d at 1468 n.3;

2. the degree of in-house counsel's involvement in competitive decisionmaking, "such that the attorney would have a difficult time compartmentalizing h[er] knowledge," *Lockheed Martin, Corp. v. The Boeing Co.*, Case No. 03-796, 2005 WL 5278461 at * 3 (M.D. Fla. 2005) (Spaulding, M.J.) (internal citations and quotation marks omitted);

3. the scope of the in-house counsel's responsibilities within the corporation, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471;[6]

4. the sensitivity of the opposing party's confidential material at issue, *id.* at 1470;

5. the potential damage that would result from inadvertent disclosure and misuse of the material, *id.*; and

6. whether the litigation is especially complex, or whether it is at an "advanced stage," such that restricting in-house counsel's access to documents and forcing a party to rely on newly retained counsel would result in "an extreme and unnecessary hardship," *U.S. Steel*, 730 F.2d at 1468.

In the case at bar, there is ample evidence in the record regarding the role of in-house counsel Jennifer Liu in corporate governance. According to the Declaration she submitted in support of Plaintiff's Motion for Temporary Restraining Order, Ms. Liu is a

---

[6] The *Brown Bag* court found that the in-house counsel's responsibility "for advising his employer on a gamut of legal issues, including contracts, marketing, and employment" counseled in favor of restricting his access to confidential materials, because he would otherwise be placed "in the 'untenable position' of having to refuse his employer legal advice on a host of contract, employment decisions, lest he improperly or indirectly reveal [the opposing party's] trade secrets." *Brown Bag*, 960 F.2d at 1471.

**Director of Legal and Business Affairs at SCEA. She is responsible for supervising SCEA's efforts to investigate and stop trademark infringement, counterfeiting, and other unlawful conduct relating to SCEA's intellectual property, and she supervises staff who work with law enforcement agents in connection with these activities. (DE # 18 at ¶ 1). At the evidentiary hearing on this motion, Ms. Liu testified that there are nine attorneys in her department, and that she reports directly to the General Counsel. Other attorneys handle product development contracts, and the General Counsel handles corporate matters.**

**Thus, based upon the record in the case at bar, it appears that Ms. Liu has a significant role in enforcement decisions regarding the distribution of the allegedly infringing products, and it might well be difficult for her to "compartmentalize" the information she receives in the case at bar. To protect against such inadvertent, as well as intentional, disclosures of highly confidential information, the undersigned has determined that it is appropriate to permit an "attorneys' eyes only" designation, which is restricted to outside counsel. The undersigned anticipates that this will be a very limited category of documents. This ruling is without prejudice, however, to the right of Plaintiff to seek to lift this designation as to particular information if necessary to do so in the litigation of this case. The undersigned recognizes the burden this places on outside counsel in terms of effective communication and representation of Plaintiff; however, the other alternative which comes to mind--permitting complete redaction subject to in camera review–is less workable and an even greater hardship on Plaintiff as well as the Court.**

**C.     Permissible Uses of Information Regarding Defendants' Customers and Suppliers**

**1.     The Proposed Burden Shifting Provision**

The parties dispute the propriety of a provision that Defendants' included in their proposed confidentiality order concerning the use of confidential materials in this and other litigation. That provision states:

> In the event that a customer or supplier of either party is contacted and questioned by the adverse party and the name of that customer or supplier was disclosed to the adverse party in a CONFIDENTIAL ATTORNEYS EYES ONLY disclosure, the adverse party will have the burden to show, by clear and convincing evidence, that it did not obtain the identity of said customer or supplier through attorney disclosure or through unauthorized access to CONFIDENTIAL ATTORNEY EYES ONLY information

(DE # 60, Ex. A at ¶ 19).

Defendants claim that provision is necessary to prevent "irreparable harm" to WIT, and to ensure that SCEA "does not use Defendants' information beyond the scope of this case as an investigative tool or as part of a 'fishing expedition' for other competitors it would like to institute actions against," or to expose its customers and suppliers to "undue scrutiny and possible harassment" (DE # 60 at 5; DE # 66 at 5).

SCEA argues that Defendants' "overreaching proposal is nothing more than an improper attempt to limit and control SCEA's litigation strategy and development of its case" by preventing it from testing Defendants' claims and defenses, including their assertion that the sale of their products do not cause customer confusion and their assertion that they obtain their products from an authorized distributor (DE # 63 at 6-7).

SCEA also notes that it should not be precluded by the terms of the confidentiality agreement from adding defendants or instituting parallel trademark

enforcement actions based on facts that come to light as a result of Defendants' discovery responses (DE # 63 at 7). In sum, SCEA points out that Defendants have implicitly conceded that they cannot prevent the disclosure of information relating to their customers and suppliers, but have proposed a confidentiality agreement that attempts to preclude SCEA from using that information in a way that is helpful to SCEA or prejudicial to Defendants (DE # 63 at 7).

On one hand, SCEA is correct that Defendants should not be permitted to use a protective order as both a sword and a shield, by resting their defenses on third parties and then restricting SCEA's efforts to test their defenses by examining those parties. SCEA is also correct to point out that, while Defendants find support in their contention that records relating to its customers and suppliers are confidential and ordinarily should not be compelled in the absence of a protective order (DE # 60 at 4) (collecting cases), they have failed to provide any legal or logical basis for their position that SCEA should not be allowed to use that information in the course of this litigation unless it can prove, by clear and convincing evidence, that it obtained the information from another source. On the other hand, the records requested *are* sensitive and do hold some potential for abuse if SCEA were permitted to use them without restriction.

Thus, the protective order in this case must balance SCEA's right to use relevant confidential materials in the course of the present litigation with Defendants' well-founded concern that confidential materials it turns over during discovery are not used or disclosed in connection with any other litigation that is not substantively related to this case. However, the undersigned finds that Defendants' suggestion that the Court impose a burden-shifting provision with respect to any questioning by Plaintiff of its customers or suppliers is not necessary, and will not be imposed.

##       2.  The Proposed Expert Witness Limitation

Defendants also seek to prohibit the disclosure of confidential discovery to any expert who is presently or has been previously retained as an expert (DE # 60, Ex. B at ¶¶ 3.a. and 5, defining "Qualified Persons" who may view confidential documents to include "outside expert witnesses ... so long as such expert witnesses or consultants were not previously and are not currently employed by such party, and such expert witnesses or consultants were not previously and are not currently contracted by such party for any purpose other than this litigation."). The undersigned finds that such a restriction is unwarranted. However, to provide a measure of extra protection, prior to disclosure of "attorneys' eyes only" information to an expert, Plaintiff will be required to identify that expert to Defendant, and Defendant will have the opportunity to lodge an objection to the disclosure to a particular expert if there is a specific reason to do so. The primary purpose of this provision is to ensure that such information is disclosed only to experts who need the information in connection with their expert evaluation.

The undersigned finds that the provisions contained in the Confidentiality Order proposed by Plaintiff are sufficient to protect the interests at stake. Specifically, that Proposed Order defines "Expert," as:

> a person with specialized knowledge or experience in a matter pertinent to the Action who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action and who is not a past or a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party. This definition includes a professional jury or trial consultant retained in connection with this Action.

(DE # 60, Ex. B. ¶ 2.12).

In addition, Plaintiff's Proposed Order provides a methodology for challenging the

disclosure to an objectionable expert.  In paragraph 7.4 of that proposed Order, before disclosing to an expert witness any information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," the party who seeks to make the disclosure must make a written request to the party who designated the material as such, which identifies the information to be disclosed, and which fully identifies the expert and provides detailed background information regarding the expert.  There is also a provision for making objections to the expert, and for obtaining a court ruling if the parties fail to agree.

      The undersigned finds that the provisions of Plaintiff's proposed Confidentiality order are sufficient to address the concerns expressed by Defendants.

      Accordingly, it is hereby

      **ORDERED** and **ADJUDGED** that Defendants' Motion for a Protective Order (DE # 60) is **GRANTED, in part.**  Within ten days from the date of this Order, Plaintiff is directed to confer with Defendants and prepare a Confidentiality Order which the parties agree is in accordance with the above rulings, and to file the Proposed Confidentiality Order with the Court.  If the parties cannot agree, a redlined version shall be submitted.  It is further

      **ORDERED** and **ADJUDGED** that Plaintiff's Motion to Compel (DE # 65) is **DENIED** without prejudice, with leave to file a renewed motion upon WIT's failure to appear (or stated intent not to appear) for a re-noticed deposition of WIT's pursuant to

Federal Rule of Civil Procedure 30(b)(6) and the terms of this Order.  It appears that the entry of a Confidentiality Order will resolve the issues related to this Motion to compel.

**DONE** and **ORDERED** in Chambers, in Miami, Florida, on February 12, 2008.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies to:**
**The Honorable Federico A. Moreno, Chief United States District Judge**
**All counsel of record**